USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1372 UNITED STATES, Appellee, v. TODD P. ISOM, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _____________________ Paul J. Klehm, by Appointment of the Court, for appellant. _____________ Margaret E. Curran, Assistant United States Attorney, with __________________ whom Sheldon Whitehouse, United States Attorney, and Lawrence D. __________________ ___________ Gaynor, Assistant United States Attorney, were on brief for ______ appellee. ____________________ June 7, 1996 ____________________ TORRUELLA, Chief Judge. Defendant-Appellant Todd Isom TORRUELLA, Chief Judge. ___________ ("Isom") appeals the district court's denial of his request to withdraw his plea of guilty. For the reasons stated herein, we affirm. BACKGROUND BACKGROUND In November 1992, Isom, along with co-defendant Anthony McKinney ("McKinney"), was indicted on two counts. Count I charged the two men with conspiracy to distribute and to possess with intent to distribute five grams or more of cocaine base. See 21 U.S.C. 846. Count II charged them with possession with ___ intent to distribute five grams or more of cocaine base. See 18 ___ U.S.C. 2; 21 U.S.C. 841(a)(1), 841(b)(1)(B). The testimony at the probable cause and change of plea hearings indicates that the circumstances of arrest were as follows. On October 26, 1993, a confidential informant, accompanied by several Drug Enforcement Administration Task Force Agents, taped two telephone conversations with McKinney. McKinney agreed to meet the informant in Providence and sell him two ounces of crack cocaine. The rendezvous took place as planned. McKinney joined the informant and an agent in an undercover vehicle. When the agent asked to see the drugs before allowing McKinney to count the money, McKinney said that "his guy" was coming with the "stuff" and directed the agent to a nearby parking lot. McKinney then got out of the car and flagged Isom, who took a clear plastic bag out of his pants and gave it to McKinney. After McKinney showed the agent some of the contents of the bag, the agent gave the -2- arrest signal. Both co-defendants fled, and were subsequently apprehended. After receiving their Miranda warnings, both defendants made statements admitting possession of the crack cocaine. At his arraignment, Isom pled not guilty. On January 14, 1994, at his change of plea hearing, the district court accepted Isom's1 change of plea to guilty on both counts, pursuant to a plea agreement, which provided, inter alia, that __________ Isom would plea guilty and the government would recommend a sentence at the low end of the sentencing guideline range or of five years, whichever was greater. At the March 18, 1994, sentencing hearing, however, defense counsel indicated to the court that Isom had informed him that he did not understand the change of plea, the attendant colloquy, or even the plea agreement. Isom then addressed the court and made a pro se _______ motion to withdraw his plea. Isom began his motion by stating that he did not want to withdraw his plea: MR. ISOM: Good morning. I just want to start off, your Honor, by saying I'm not trying to change the plea that I entered the day that I said that I was guilty of taking a bag from my co- defendant. Also I want to make a statement clearly that I also received it from my co-defendant to bring it down there, okay.  Immediately following these statements, however, Isom presented his reasons to withdraw his plea: his lack of understanding of  ____________________ 1 McKinney had already pled guilty to the two counts of the indictment. -3- the plea agreement and ineffective assistance of counsel. I feel like this, I came in here to this courtroom January 14th to plead under that, but I did not understand the plea agreement, and did not see the plea agreement until that day, until that morning, five minutes before I entered the courtroom. My lawyer states that he went over it with me. I don't have copies of nothing, your Honor, anything, not even discovery package, nothing. I don't have nothing. He claims he came, he discussed this. He claims why I didn't want copies of them. I don't understand that, your Honor. I feel like this, if he was -- if I was supposed to have copies of them, I should have had copies of them. I just feel -- I put in a motion to withdraw the plea.  Isom concluded by pleading his innocence. I just taking -- taking into consideration and ask you, to beg you, to beg the Court, that you take into consideration and look at the motion, and I'll go with your decision, whatever you decide to grant, whatever you decide your go under, but I really feel as I should have a chance to prove my innocence in this case here. I'm freely pleading out to something I didn't even have nothing to do with. Just because I brung the bag down to him, with the knowledge of not knowing what was in it, doesn't say that I was involved with a drug deal. I'm not a drug dealer, and I feel I just go from my heart that I should just let you look over the motion. Thank you. (Sentencing Hearing, at 3-4). The court refused Isom's motion: THE COURT: Well, it comes too late, to begin with. I took your plea here in open court, and I asked you all the questions, and you made all the right answers -- MR. ISOM: Yup. THE COURT: (Continued) -- to plead in this matter.  MR. ISOM: Yes. -4- THE COURT: And you told me you understood the plea agreement. MR. ISOM: Uh-hum. THE COURT: And what the Government's recommendation was going to be. So I'm not going to allow you to pull out at this point. MR. ISOM: Okay. No problem. (Sentencing Hearing, at 4-5). Isom was sentenced to sixty months in prison, to be followed by four years of supervised release, and a $100 assessment. Ten days following the sentencing hearing, a written motion to withdraw plea was filed. Isom's signature on the motion, which was apparently prepared by a paralegal clerk at a detention center, was notarized on March 15, prior to the sentencing hearing. The written motion stated, inter alia, that __________ the plea should be withdrawn as it was entered without the proper advice of counsel, and that Isom did not understand the nature of the charge, the consequences of the plea, or his rights in connection with the plea. In support of these contentions, the motion maintained that Isom was a functional illiterate, that he was innocent, and that the government would suffer no prejudice from withdrawal of Isom's guilty plea. The reason presented for withdrawal was ineffective assistance of counsel. The court denied the motion, on the grounds that it was untimely and lacked substance. This appeal ensued. DISCUSSION DISCUSSION The sole issue before us is whether the district court erred in denying Isom's oral and written motions to withdraw his plea of guilty without an evidentiary hearing. After -5- establishing our standard of review, we set out the legal framework and weigh the merits of Isom's appeal. For the reasons discussed below, we affirm the district court. A. Standard of Review A. Standard of Review __________________ The timing of a motion determines our standard of review: we apply an abuse of discretion standard to pre- sentencing motions, see United States v. Gray, 63 F.3d 57, 60 ___ _____________ ____ (1st Cir. 1995), and a miscarriage of justice standard to post- sentencing motions, see United States v. Ruiz-del Valle, 8 F.3d ___ _____________ _______________ 98, 103 (1st Cir. 1993). Isom made two motions, the pre- sentencing oral motion and the post-sentencing written motion. However, as the written motion was notarized before sentencing occurred, and Isom referred to it during his oral motion before the sentencing court, the Government does not contend that the more rigorous miscarriage of justice standard should apply to the written motion. We here apply the abuse of discretion standard to both motions without further comment, in part because we find that even under the more lenient pre-sentencing standard, Isom's appeal must fail. See generally United States v. Parrilla- ______________ ______________ _________ Tirado, 22 F.3d 368, 371 (1st Cir. 1994) (noting that abuse of ______ discretion standard is applied out of deference to the trial judge's special insight into the dynamics of a case). B. The Legal Framework B. The Legal Framework ___________________ It is by now well established that a defendant does not have an absolute right to withdraw a guilty plea. See Gray, 63 ___ ____ F.3d at 59; United States v. Austin, 948 F.2d 783, 786 (1st Cir. _____________ ______ -6- 1991); see also United States v. Kobrosky, 711 F.2d 449, 454 (1st ________ _____________ ________ Cir. 1983) (setting out logic behind premise). Rather, the plea may be withdrawn "only upon a showing of 'fair and just reason' for the request." United States v. Cotal-Crespo, 47 F.3d 1, 3 ______________ ____________ (1st Cir.), cert. denied, __ U.S. __, 116 S. Ct. 94 (1995); see ____________ ___ Fed. R. Crim. P. 32(e); Austin, 948 F.2d at 786. The defendant ______ carries the burden of persuading the court that he has shown such a fair and just reason. Parrilla-Tirado, 22 F.3d at 371. A _______________ court must consider several factors in weighing whether a defendant meets this burden, the most significant of which is whether the plea was knowing, voluntary and intelligent within the meaning of [Federal Rule of Criminal Procedure] 11. The other factors include: 1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement.  Cotal-Crespo, 47 F.3d at 3-4 (citation omitted); see also Gray, ____________ ________ ____ 63 F.3d at 60; Parrilla-Tirado, 22 F.3d at 371 (omitting fourth _______________ factor). There is "a final barrier that must be surmounted: even if a defendant appears at first blush to meet the strictures of this four-part test, the nisi prius court still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the defendant is permitted to alter his stance." Id.; see Kobrosky, 711 F.2d at ___ ___ ________ 455.  C. Analysis C. Analysis ________ In essence, Isom claims that his assertions of -7- ineffective assistance of counsel, a lack of understanding of the plea agreement, and his professed innocence constitute a fair and just reason sufficient that the district court erred in denying his motion to withdraw his change of plea. Having established our basic legal framework, we address each of the factors in detail. 1. The Rule 11 Colloquy 1. The Rule 11 Colloquy ____________________ As noted above, our first consideration is whether the plea was knowing, voluntary and intelligent as understood in terms of Rule 11. "We have identified three 'core concerns' of Rule 11: 1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea." Gray, 63 F.3d at 60; see ____ ___ Cotal-Crespo, 47 F.3d at 4. Failure to address one of these ____________ concerns requires that the guilty plea be set aside. Gray, 63 ____ F.3d at 60.  In determining whether there has been a core violation, we review the totality of the circumstances surrounding the Rule 11 hearing, rather than apply a "talismanic test." What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication. Cotal-Crespo, 47 F.3d at 4-5 (citation omitted); see United ____________ ___ ______ States v. Ribas-Dominicci, 50 F.3d 76, 78 (1st Cir. 1995). In ______ _______________ the absence of failure to address a core concern, "the question to be determined is whether deficiencies in the Rule 11 hearing affected the defendant's 'substantial rights.'" Gray, 63 F.3d at ____ -8- 60. We "review the record, including the change-of-plea and sentencing transcripts, with a view to whether the omission was harmless." United States v. L pez-Pineda, 55 F.3d 693, 696 (1st _____________ ____________ Cir.), cert. denied, __ U.S.__, 116 S. Ct. 259 (1995); see Fed. ____________ ___ R. Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). "It is axiomatic that the procedures followed by the district court in accepting a plea are crucial in later determining whether the plea was truly understanding and voluntary." Ruiz-del Valle, 8 F.3d at 102. In the present case, ______________ the court conducted a comprehensive inquiry under Fed. R. Crim. P. 11. In response to the court's questioning, Isom confirmed that he had a ninth-grade education and was not under the influence of any drug, medication, or alcoholic beverage. He agreed that he had received a copy of the indictment, had discussed it fully with his counsel, and that he was satisfied by his counsel's representation and advice. The court instructed Isom to listen carefully as the Government set forth the essentials of the plea agreement; Isom agreed that the account corresponded to his understanding of the plea agreement, that he had signed it after a full discussion of it with his attorney, and that he had read it prior to signing it. He attested that there had been no other promises or assurances made him to induce him to plead guilty, and that there were no attempts to force him or coerce him into doing so. Isom further confirmed that he understood that he was charged with felony offenses, due to which -9- he may be deprived of certain civil rights; that he understood the maximum penalties applicable and that the guidelines may not establish the same penalty; that he had discussed the guidelines with his attorney; and that he knew the judge would determine the applicable sentence after a presentence report. At the court's questioning, Isom also agreed that he knew he had the right to a trial with or without a jury, as well as the rights incidental to a trial, such as the right to counsel. When the circumstances of his arrest, as described above, were recounted, the following colloquy ensued between the court and Isom: Q Did you hear all that, Mr. Isom? A Yes, I did. Q And are those the facts in your case? A Somewhat. I did not pull anything from out of my pants, and I did not -- it was in a plastic bag, in a napkin, and they did not flee the area, either. Q I'm sorry, they did not what? A I did not flee the area like they said, they chased me. I did not run nowhere. Q But you delivered some crack cocaine? A Yes, I did. Yes. Q You admit to that? A Yes, I do. Q Is there anything else you want to add or subtract from what the prosecutor said? A No. That's all. (Change of Plea Hearing, at 12). The court reiterated the charges against Isom, seeking his confirmation that he understood them and that he was prepared to plead guilty to them. Finally, finding that Isom's plea of guilty was knowing and voluntary as well as supported by an independent basis in fact, the court accepted Isom's change of plea. -10- In his motions and on appeal, Isom maintains that he did not understand either the plea agreement or the Rule 11 colloquy. However, he fails to point to any specific error or point of confusion. Our own examination of the record reveals no error. See Ruiz-del Valle, 8 F.3d at 102 (examining sua sponte ___ ______________ __________ compliance with Rule 11). The court directly addressed the three crucial aspects of the colloquy -- whether Isom had been coerced, whether he understood the charges, and whether he understood the consequences of his plea. Nothing in the record indicates that he was coerced or did not understand the agreement or the colloquy. Rather, Isom's statements are indicative of his understanding: he corrected the detailed account of the circumstances surrounding his arrest on three particular points, ultimately agreeing that he had in fact delivered crack. Further, when the court asked him whether he and his counsel had come to a ballpark figure of what the applicable sentencing guidelines would be, he stated: A No I haven't. Have I come to any agreement? [DEFENSE COUNSEL]: No. Do you have a ballpark figure as to -- THE WITNESS: Five to forty. Q You think you're probably going to do five years in this case, Mr. Isom? A No. It was five to forty, that's all I understood what it was. (Change of Plea Hearing, at 8). This colloquy indicates that Isom clearly understood the possible implications of his guilty plea. Indeed, defense counsel testified at the sentencing hearing that he had spent an hour and a half going over the plea -11- agreement with Isom, and that Isom had refused to take any copies of the agreement or the pre-sentence report.  At oral argument, appellant's counsel argued that the fact that the colloquy consisted of leading questions, to which defendant merely had to answer "yes," indicates somehow that it was insufficient: the court knew Isom's reading skills were minimal,2 and so it should have had Isom describe the agreement in his own words. Cf. Cotal-Crespo, 47 F.3d at 6 ("The manner ___ ____________ in which the charge is explained and the method for determining the defendant's understanding of the charge will vary from case to case depending upon the complexity of the charges, the capacity of the defendant, and the attendant circumstances."). We find no merit in this position. The charges here are fairly simple, and, as appellant's counsel admitted at oral argument, there is no evidence that Isom's capacity is diminished. The fact that Isom has had little formal education does not imply he is not intelligent enough to understand a Rule 11 colloquy. Indeed, his responses to the court addressed detailed points of the testimony, suggesting he was following the discussion in the courtroom. In fact, Isom did not simply agree to everything the court asked him, as he now contends his attorney told him to do: in the colloquy quoted above, he denied that he had come to a ballpark figure of what the sentencing guidelines would require, confirming that with his counsel. Quite simply, Isom has failed  ____________________ 2 Defendant testified at the change of plea hearing that he had a ninth-grade education. At the sentencing hearing, however, the court stated that Isom had a second-grade reading level. -12- to meet his burden of demonstrating that the plea was not knowing, voluntary, and intelligent.  2. Force and Plausibility of Proffered Reason 2. Force and Plausibility of Proffered Reason __________________________________________ Isom must demonstrate a plausible reason for the withdrawal of his guilty plea. "In this context, plausibility must rest on more than the defendant's second thoughts about some fact or point of law, or about the wisdom of his earlier decision." Parrilla-Tirado, 22 F.3d at 371 (citations omitted). _______________ The reasons Isom offers here are innocence, ineffective assistance of counsel, and failure to make a voluntary plea. As the last reason has already been discussed and dismissed above, we address only the first two here. First, Isom claims his innocence. In his written motion, he alleges that he could produce wholly exculpatory evidence at trial, but does not specify its nature. Examining the record, we find that Isom's eleventh-hour profession of innocence lacks merit, and thus does not rise to the level of a "fair and just reason" for withdrawal of his claim. In United ______ States v. Ramos, 810 F.2d 308 (1st Cir. 1987), we found that the ______ _____ defendant's claim of innocence lacked merit where, as here, he did not assert innocence at the change of plea hearing, but only at the sentencing hearing, when he had already been convicted for a similar crime. Id. at 313. Ramos, like Isom, claimed to ___ possess exculpatory information sustaining his innocence, but provided no insight into its substance. In these circumstances, the court in Ramos held that "the trial court did not abuse its _____ -13- discretion in refusing to give weight to a self-serving, unsupported claim of innocence raised judicially for the first time after the Rule 11 hearing." Id. ___ That finding is equally true here. Indeed, Isom not only failed to maintain his innocence at the Rule 11 hearing, he clarified specific points regarding the events, agreeing immediately afterwards that he delivered crack cocaine. His claim of innocence in his oral motion followed his opening statement that he "received [a bag] from my co-defendant to bring it down there, okay." (Sentencing Hearing, at 3). Appellant urges us to read this "obvious confusion" as highlighting his need to withdraw his plea so that he may gain a better understanding of the legal issues involved in his case. We decline the invitation, however, for we interpret Isom's contradictory statements as the Ramos court did that defendant's _____ inconsistent claims of innocence, and find Isom's assertion of innocence lacks merit. Cf. Parrilla-Tirado, 22 F.3d at 373 ___ _______________ ("Courts need not accept a defendant's explanations uncritically."). Isom asserts a second "fair and just" reason: ineffective assistance of counsel. This court applies the Strickland v. Washington, 466 U.S. 668 (1984), standard for __________ __________ evaluating an ineffective assistance of counsel claim. See, ___ e.g., Ramos, 810 F.2d at 314. Thus, to successfully challenge a ____ _____ guilty plea, a defendant must show that, first, "counsel's performance in advising guilty pleas fell below the standard of -14- performance of reasonable proficient counsel," and second, that "by such inadequate performance, Appellant was induced to enter guilty pleas which he otherwise would not have entered." Austin, ______ 948 F.2d at 786; see Ramos, 810 F.2d at 314.  ___ _____ Isom contends that the district court erred in not holding an evidentiary hearing on his ineffective assistance claim. As he points out, this court has refused to hear ineffective assistance claims for the first time on appeal where there is no record on which to rely. In such cases, we have held that such claims should be brought in collateral proceedings pursuant to 28 U.S.C. 2255, where a record may be developed. See, e.g., United States v. Carter, 815 F.2d 827, 829 (1st Cir. ___ ____ ______________ ______ 1987) (noting that ineffective assistance charges "depend on evidentiary matters that are best considered by the district court in the first instance."); Kobrosky, 711 F.2d at 457.  ________ Fairness to the parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district level. Austin, 948 F.2d at 785 (finding that the appellate court had ______ jurisdiction to hear the claim where it was confined to matters in the record).  Rather than conclude that a collateral proceeding is appropriate in the present case, however, Isom argues that we should remand for a full evidentiary hearing on his claim. We remind him that evidentiary hearings are not an entitlement: -15- [E]videntiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion. Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ______________ ______ (upholding district court refusal to hold evidentiary hearing on 28 U.S.C. 2255 motion) (citations omitted); see United States ___ _____________ v. Garc a, 954 F.2d 12 (1st Cir. 1992) (upholding district court ______ refusal to hold evidentiary hearing on sentencing guideline issue); United States v. Thompson, 906 F.2d 1292, 1298-99 (8th _____________ ________ Cir. 1990) (finding that district court did not abuse its discretion in denying motion to withdraw a plea based on ineffective assistance without holding evidentiary hearing). We also note that in neither his oral nor his written motion did Isom request an evidentiary hearing. See United States v. ___ ______________ Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992) (noting that "the _______ failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should have been held" on sentencing guidelines issues).  Isom's request that we remand for an evidentiary hearing fails. Simply put, having considered the record of the hearings as well as the written motion, we find that the district court's decision not to hold an evidentiary hearing does not constitute an abuse of its discretion. See Ramos, 810 F.2d at ___ _____ 314 (noting that current counsel's "conclusory, factually -16- unsupported assertion that [previous] counsel were negligent . . . . [was] insufficient for us to require an evidentiary hearing."); Kobrosky, 711 F.2d at 457 (dismissing charge where no ________ extrinsic evidence was offered to buttress the allegations of ineffective assistance or to counter the government's protest that it would be prejudiced). Isom may, of course, bring his ineffective assistance of counsel claim in a collateral proceeding under 28 U.S.C. 2255, where a record may be developed. Isom makes the alternative argument that he presented enough information during his oral plea for us to be able to determine that he should be able to withdraw his plea as a result of ineffective assistance of counsel. This argument also fails. First, the ineffective assistance claim was made sketchily at best: Isom claimed he did not see the plea agreement until the morning, and that he did not have copies of any documents. His counsel, in turn, stated to the court that he had spent one and a half hours going over the three-page plea agreement, and that Isom had never asked for copies of anything, but had in fact refused copies. Isom does not contest these representations. We cannot say that the district court abused its discretion in denying the oral motion when Isom's ineffective assistance claim was only briefly made, where there was testimony contradicting his assertions, where he had stated in his Rule 11 colloquy that he signed the agreement after a full discussion of it with his attorney, and where there was no evidence that Isom had not, in -17- fact, understood the Rule 11 colloquy. Indeed, the district court specifically commended counsel for doing "an excellent job" for Isom, winning him the maximum guideline benefits in sentencing.  3. Timing of the Request 3. Timing of the Request _____________________ We have repeatedly noted that the more a request is delayed -- even if made before sentence is imposed -- the more we will regard it with disfavor. See, e.g., United States v. ___ ____ ______________ Gonz lez-V zquez, 34 F.3d 19, 23 (1st Cir. 1994); Parrilla- ________________ _________ Tirado, 22 F.3d at 373. "The rule of thumb is that the longer a ______ defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." Id. Thus, we have viewed unfavorably motions ___ to withdraw a plea made six months following the guilty plea, id., seven months later, United States v. Doyle, 981 F.2d 591, ___ ______________ _____ 595 (1st Cir. 1992), three weeks later, United States v. Keefe, _____________ _____ 621 F.2d 17, 18 (1st Cir. 1980), or thirteen days later, Ramos, _____ 810 F.2d at 313. Clearly, Isom's two-month delay in making his request falls well within this range. See United States v. ___ ______________ Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (upholding district ______ court's refusal to grant motion to withdraw where, inter alia, __________ motion was made eight weeks following sentencing). "Given the totality of the circumstances that pertain here, [A]ppellant's lassitude serves to cast considerable doubt upon the legitimacy of his professed reason for seeking to change course." Gonz lez- _________ V zquez, 34 F.3d at 23. _______ -18- Isom argues on appeal that the district court erred in stating that the oral motion was not timely. Indeed, as he points out, Fed. R. Crim. P. 32(e) allows a plea to be withdrawn any time prior to sentencing if defendant shows a fair and just reason. However, making a motion to withdraw a plea two months following a Rule 11 hearing "complies with the letter, but certainly not the spirit" of Rule 32(e). Crosby, 714 F.2d at ______ 192. Isom also emphasizes that he made both motions prior to sentencing. This, however, is not a factor courts assessing the timing of a change of motion plea have given great weight: more significant has been the fact that a withdrawal of plea motion comes after a presentence report sets out the possible sentence. See, e.g., Parrilla-Tirado, 22 F.3d at 373 (noting that ___ ____ _______________ defendant's "belated change of heart followed not long after the PSI Report"); Doyle, 981 F.2d at 595 (commenting that motion came _____ shortly after discovery that court was contemplating long prison sentence).  Appellant's next argument, namely, that given Isom's difficulties with the written word, it was logical that he first raised his motion to withdraw orally at his first court appearance following the change of plea hearing, is inconsistent with his position that the written motion was actually made prior to sentencing. Indeed, Isom referred to the written motion in his oral motion.  4. Assertion of Innocence 4. Assertion of Innocence ______________________ An assertion of innocence weighs the balance in favor -19- of withdrawal; the failure to do so does the opposite. See ___ Parrilla-Tirado, 22 F.3d at 373. Nonetheless, "the mere _______________ protestation of legal innocence cannot in and of itself be issue- determinative, for '[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.'" Kobrosky, ________ 711 F.2d at 455 (quoting N ez-Cordero v. United States, 533 F.2d _____________ _____________ 723, 726 (1st Cir. 1976)). Thus, "if defendant's factual contentions create no 'legally cognizable defense' to the charges, 'he has not effectively denied his culpability,' and the motion can be denied." Ramos, 810 F.2d at 312 (quoting United _____ ______ States v. Barker, 514 F.2d 208, 221 (D.C. Cir.) (en banc), cert. ______ ______ _______ _____ denied, 421 U.S. 1013 (1975)). Isom's assertion of innocence is ______ addressed above.  5. Other Factors 5. Other Factors _____________ Finally, we note that Isom did, indeed, have a plea agreement with the government, which was not breached.  "Since all the critical integers in the decisional calculus counsel affirmance, we need not embark upon an analysis of possible prejudice to the government." Doyle, 981 F.2d at 596 _____ n.6. CONCLUSION CONCLUSION For the reasons discussed above, the district court's refusal to grant Isom's motion to withdraw his plea is affirmed.  affirmed. ________ -20-