USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1179

 UNITED STATES,

 Appellee,

 v.

 GERALDO GONZALEZ,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 
 Kern Cleven for appellant.
 Arnold H. Huftalen, Assistant United States Attorney, with
whom Paul M. Gagnon, United States Attorney, was on brief for
appellee.

January 24, 2000

 
 

 STAHL, Circuit Judge. Defendant-appellant Geraldo
Gonzalez appeals from the district court's refusal to allow him to
withdraw his plea before sentencing, and its failure to conduct an
evidentiary hearing on the motion seeking such withdrawal. We
affirm.
 I.
 Background
 On April 10, 1997, Gonzalez, a national of Cuba who has
resided in the United States since 1980, was indicted on three
separate charges. Attorney Phillip Desfosses was appointed to
represent him. On August 4, 1997, represented by Desfosses's
partner Harry Starbranch, Gonzalez pleaded guilty to two charges:
mail fraud, in violation of 18 U.S.C. 1341 (1994), and the use of
an unauthorized access device to obtain property exceeding $1,000
in value, as proscribed by 18 U.S.C. 1029(a)(2) (1994). During
his plea colloquy, Gonzalez admitted that the losses resulting from
his crimes in fact exceeded $10,000.
 Gonzalez successfully moved to continue sentencing on
November 10, 1997, and on December 25, 1997, he requested
substitute counsel. On December 30, 1997, Desfosses moved to
withdraw from the case. In January, 1998, the court granted
Desfosses's motion and appointed attorney Sven Wiberg to represent
Gonzalez.
 On September 4, 1998, following several more continuances
which further postponed sentencing, Gonzalez moved to withdraw his
plea pursuant to Federal Rule of Criminal Procedure 32(e) ("Rule
32(e)"). Gonzalez's Rule 32(e) motion averred that he had not been
informed of his guilty plea's "potential and/or likely adverse
immigration consequences" until after the plea was made. The
motion included a letter from Desfosses confirming Gonzalez's
assertion. Gonzalez argued that Desfosses's failure to advise him
of the immigration issue constituted ineffective assistance of
counsel and rendered his plea defective. Gonzalez did not request,
and the court did not conduct, an evidentiary hearing on the Rule
32(e) motion. 
 On December 7, 1998, the court denied Gonzalez's motion. 
Gonzalez filed a "Motion to Reconsider Motion to Withdraw Plea,"
which was denied on January 4, 1999. The next day, the court
sentenced Gonzalez to twenty-seven (27) months of imprisonment and
ordered him to pay $17,273.03 in restitution.
 In addition to his criminal punishment, Gonzalez's
conviction subjected him to potential immigration-related
consequences. The Immigration and Nationality Act ("INA"), 8
U.S.C. 1101 et seq. (1994 & Supp. II 1996), enumerates various
"aggravated felonies" the commission of which will render an alien
deportable. See id. 1101 (a)(43); id. 1227 (a)(2)(A)(iii). 
This list includes "an offense that . . . involves fraud or deceit
in which the loss to the victim or victims exceeds $10,000." Id.
 1101(a)(43)(M). Because Gonzalez's fraudulent activities caused
losses exceeding $10,000, he had committed an "aggravated felony"
under the INA, and had therefore become subject to deportation.
 The INA directs the Attorney General to "take into
custody any alien who . . . is deportable by reason of having
committed [among other things, any aggravated felony] . . . when
the alien is released." Id. 1226(c)(1). The Attorney General
may release such an alien only in narrowly limited circumstances
not here applicable. This regime reflects amendments embodied in
the Illegal Immigration Reform and Immigrant Responsibility Act of
1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). As a
native of Cuba, which has no deportation agreement with the United
States, Gonzalez now faces the possibility of indefinite
administrative detention following his release from prison.
 II.
 Discussion
 Gonzalez advances several arguments in his attempt to
reverse the district court's refusal to grant his Rule 32(e)
motion. He also challenges the court's failure to hold an
evidentiary hearing prior to ruling on the motion. We address
these arguments in turn.
A. Motion to Withdraw Plea
 The heart of Gonzalez's claim is that neither his
attorneys nor the district judge advised him that if he pleaded
guilty, he would be deemed "deportable" and subject to detention by
the INS. He further complains that the district court failed to
warn him of the possibility of restitution. Gonzalez contends that
these deficiencies entitled him to withdraw his plea. We review
the trial court's refusal to grant a change of plea only for abuse
of discretion, see, e.g., United States v. Raineri, 42 F.3d 36, 41
(1st Cir. 1994); United States v. Austin, 948 F.2d 783, 787 (1st
Cir. 1991), and finding none, we affirm. 
 Rule 32(e) states that "[i]f a motion to withdraw a plea
of guilty . . . is made before sentence is imposed, the court may
permit the plea to be withdrawn if the defendant shows any fair and
just reason." Fed. R. Crim. P. 32(e) (emphasis added). A
defendant thus has no absolute right to withdraw a plea. See
United States v. Muriel, 111 F.3d 975, 978 (1st Cir. 1997); United
States v. Isom, 85 F.3d 831, 834 (1st Cir. 1996). A "fair and just
reason" is a necessary, but not sufficient, predicate to plea
withdrawal. See United States v. Doyle, 981 F.2d 591, 594 (1st
Cir. 1992) ("A defendant may withdraw a guilty plea prior to
sentencing only upon a showing a fair and just reason for the
request."); see also Raineri, 42 F.3d at 41 (same). 
 Rule 32(e) motions must be considered in the general
context of Fed. R. Crim. P. 11 ("Rule 11"), which governs the entry
of all guilty pleas. Rule 11(c) provides that:
 [b]efore accepting a plea of guilty . . . the
 court must address the defendant personally in
 open court and inform the defendant of, and
 determine that the defendant understands, . .
 . the nature of the charge to which the plea
 is offered, the mandatory minimum penalty
 provided by law, if any, and the maximum
 possible penalty provided by law, including
 the effect of any special parole or supervised
 release term, the fact that the court is
 required to consider any applicable sentencing
 guidelines but may depart from those
 guidelines under some circumstances, and, when
 applicable, that the court may also order the
 defendant to make restitution to any victim of
 the offense.

Fed. R. Crim. P. 11. Yet Rule 11(h), labeled "Harmless Error,"
states that "[a]ny variance from the procedures required by [Rule
11] which does not affect substantial rights shall be disregarded."
 In evaluating Rule 32(e) motions, a court's central
concern is whether the plea was "voluntary, intelligent and
knowing, within the meaning of Rule 11." United States v. Marrero-
Rivera, 124 F.3d 342, 347 (1st Cir. 1997); see also United States
v. Cotal-Crespo, 47 F.3d 1, 3 (1st Cir. 1995); United States v.
Allard, 926 F.2d 1237, 1243 (1st Cir. 1991). In addition, the
district court must consider four factors: (1) the force of the
defendant's reason for the change of plea; (2) the timing of the
request; (3) whether or not the defendant asserts innocence in
connection with his plea withdrawal; and (4) whether a plea
agreement had been reached. See Marrero-Rivera, 124 F.3d at 347;
Isom, 85 F.3d at 834; Cotal-Crespo, 47 F.3d at 4. We address the
final three factors first and then turn to the reasons for
Gonzalez's requested plea withdrawal and whether those reasons
render his plea involuntary.
 The timing of Gonzalez's motion casts doubt on his
entitlement to a plea withdrawal. "[A] long interval between the
plea and the request often weakens any claim that the plea was
entered in confusion or under false pretenses." Doyle, 981 F.2d at
595; see also Isom, 85 F.3d at 838-39. Of course, when a defendant
seeks to withdraw his plea based on knowledge that was obtained
after the plea, the relevant temporal gap is not the time between
the Rule 32(e) motion and the original plea, but the time between
his discovery of the new information and the filing of his motion. 
Here, this gap is extensive. In the letter from Desfosses that
Gonzalez submitted with his Motion to Withdraw Plea, Desfosses
stated that "[i]t was not until the attorney-client relationship
between myself and Mr. Gonzalez had started to breakdown did he
inform me that the law had recently been changed regarding the
deportation of Cubans due to felony convictions." Thus, Gonzalez
became aware of his plea's immigration consequences sometime before
the end of December, 1997, when Desfosses sought to remove himself
from further representation. Yet, notwithstanding that acquired
knowledge, Gonzalez did not move to withdraw his plea until
September, 1998. We have previously rejected plea withdrawal
motions in which the relevant gap was six months, see Doyle, 981
F.2d at 595, two months, see Isom, 85 F.3d at 839, three weeks, see
United States v. Keefe, 621 F.2d 17, 18 (1st Cir. 1980), and even
thirteen days, see United States v. Ramos, 810 F.2d 308, 313 (1st
Cir. 1987). 
 Gonzalez's consistent failure to assert his innocence
also weighs against the reversal of the district court's decision. 
"Courts look more hospitably on a motion to withdraw a guilty plea
when the motion is coupled with an assertion of innocence. . . .
[T]he absence of a claim of innocence weighs in favor of allowing
a guilty plea to stand." Doyle, 981 F.2d at 596. Gonzalez at no
time asserted his innocence. Finally, Gonzalez does not dispute
that he signed a plea agreement, and that signed agreement casts
further doubt on his claims.
 We thus turn to the three purported bases of Gonzalez's
Motion to Withdraw Plea, and the question whether in light of these
claims, his plea was "knowing, intelligent and voluntary."
 1. Ineffective Assistance of Counsel
 The principal argument that Gonzalez makes for his claim
that his plea was defective under Rules 11 is that his counsel
failed to advise him of the plea's immigration consequences before
it was offered. Thus, Gonzalez claims, he was entitled to withdraw
his plea. We disagree.
 In 1984, the Supreme Court established the now-familiar
standard for constitutionally ineffective assistance of counsel:
"First, the defendant must show that counsel's performance was
deficient. . . . Second, the defendant must show that the
deficient performance prejudiced the defense." Strickland v.
Washington, 466 U.S. 668, 687 (1984). In the plea context, a
defendant must show "a reasonable probability that, but for
counsel's errors, he would not have pleaded guilty and would have
insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59
(1985); see also Isom, 85 F.3d at 837 (same); Knight v. United
States, 37 F.3d 769, 774 (1st Cir. 1994).
 Even if Gonzalez could demonstrate ineffective assistance
of counsel, he cannot show the necessary prejudice. First, he had
previously been convicted of crimes in the state of New Hampshire
that exposed him to immigration consequences identical to those
resulting from his federal conviction. On July 19, 1996, Gonzalez
was arrested in Nashua, New Hampshire, and charged with (1)
possession of marijuana with intent to sell and (2) conspiracy to
possess marijuana with intent to sell. He was convicted on both
counts and on July 2, 1999, the New Hampshire Supreme Court upheld
his convictions. Under the INA, those crimes, just like his
federal crimes, constitute aggravated felonies. See 8 U.S.C.
 1101(a)(43) (defining term "aggravated felony" to include
"illicit trafficking in a controlled substance . . . including a
drug trafficking crime" and to apply to such activity "whether in
violation of Federal or State law").
 Even if we were to ignore his state court convictions,
and even if we were to assume -- despite a dearth of evidence on
the subject -- that Gonzalez would not have pleaded guilty had he
known of his plea's immigration consequences, we still would not
regard Desfosses's representation as constitutionally defective. 
Along with numerous other courts of appeals, we have held that
deportation is only a collateral concomitant to criminal
conviction. See, e.g., United States v. Quin, 836 F.2d 654, 655
(1st Cir. 1988). Counsel's failure to advise a defendant of a
collateral consequence is a legally insufficient ground for a plea
withdrawal. See, e.g., id.; United States v. George, 869 F.2d 333,
337 (7th Cir. 1989) ("While the Sixth Amendment assures an accused
of effective assistance of counsel in 'criminal prosecutions,' this
assurance does not extend to collateral aspects of the
prosecution."); United States v. Cariola, 323 F.2d 180, 186 (3d
Cir. 1963) (finding "no basis for holding that the finality of a
conviction depends upon a contemporaneous realization by the
defendant of the collateral consequences of his plea"); United
States v. Parrino, 212 F.2d 919, 921-922 (2d Cir. 1954) (same).
 In Quin, the defendant had "waived jury and acceded to a
bench trial in ignorance of the deportation consequences of a
guilty finding due to the failure of his counsel to inform him
thereof; [defendant argued] that this constituted constitutionally
ineffective counsel, and that he [was thus] entitled to start
over." Quin, 836 F.2d at 655. We disagreed, noting that as a
"collateral consequence" of conviction, deportation was "legally
irrelevant, even as to an outright guilty plea." Id.; see also
George, 869 F.2d at 337 ("A deportation proceeding is a civil
proceeding which may result from a criminal prosecution, but is not
a part of or enmeshed in the criminal proceeding. It is collateral
to the criminal prosecution."); United States v. Yearwood, 863 F.2d
6, 7 (4th Cir. 1988) ("[A]n attorney's failure to advise a client
that deportation may result from a conviction does not constitute
ineffective assistance of counsel."); United States v. Campbell,
778 F.2d 764, 766-67 (11th Cir. 1985) (finding no attorney
obligation to inform client of plea's immigration consequences);
Sanchez v. United States, 572 F.2d 210, 211 (9th Cir. 1977) (same);
Parrino, 212 F.2d at 921, 923 (2d Cir. 1954) (holding that where
evidence was clear that defendant had asked counsel whether he
could be deported after pleading guilty, and counsel had
unequivocally, but erroneously, replied "no," counsel had not been
constitutionally ineffective and withdrawal of guilty plea was not
required).
 Although Gonzalez recognizes the doctrine of collateral
consequences, he contends that "those cases relying [on it] may not
have aged well." This claim is grounded only in conclusory
assertions that, since IIRIRA's passage, "various routes of
judicial and administrative relief" that were once available to
deportable felons are foreclosed, and that now, his deportation --
or indefinite administrative detention -- is "to be expected
virtually by operation of law." 
 "[I]n a multi-panel circuit, newly constituted panels,
generally speaking, are bound by prior decisions on point." Irving
v. United States, 49 F.3d 830, 833 (1st Cir. 1995) (quoting Metcalf
& Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth., 991 F.2d 935,
939 n.3 (1st Cir. 1993)) (internal quotation marks omitted). 
Gonzalez implicitly invokes one of this rule's noted exceptions,
which "pertains to those relatively rare instances in which
authority that postdates the original decision, although not
directly controlling, nevertheless offers a sound reason for
believing that the former panel, in light of fresh developments,
would change its collective mind." Williams v. Ashland Eng'g Co.,
45 F.3d 588, 592 (1st Cir. 1995).
 Gonzalez has failed to persuade us that our precedents
regarding the collateral nature of deportation require
revisitation. Gonzalez appears to contend that the crimes for
which he was convicted were only recently reclassified as
"aggravated felonies," and that Quin, which predates IIRIRA, is
therefore inapplicable. Moreover, he notes that under the amended
INA, the Attorney General is required to take him into custody
immediately upon his release from prison, and to place him into
automatic, indefinite, and unreviewable administrative detention. 
In light of this statutory regime, Gonzalez suggests, the
immigration consequences of his guilty plea can no longer be
considered merely collateral. The first argument, while
descriptively sound, is irrelevant; the second is legally flawed.
 First, the decisions Gonzalez seeks to overturn nowhere
address, much less rely upon, the distinction between "aggravated
felonies" and other grounds for deportability. Indeed, the term
"aggravated felony" was first introduced into immigration
jurisprudence in the Anti-Drug Abuse Act of 1988, Pub. L. No.
100-690, 7342, 102 Stat. 4181, 4469. That act was passed in
November of 1988, after Quin, Parrino, Sanchez, and Campbell had
issued. The collateral nature of deportation is not affected by
IIRIRA's expansion of the "aggravated felon" category, because the
immigration consequences of a plea are collateral irrespective of
the reason for which an alien is deemed deportable.
 Second, contrary to Gonzalez's claims, IIRIRA did not so
substantially alter the treatment of individuals in his situation
as to warrant reconsideration of whether deportation is still a
collateral consequence of conviction. Even prior to IIRIRA's
passage, any alien who committed an aggravated felony was
considered deportable, see 8 U.S.C. 1251(a)(2)(A)(iii) (1995),
amended by 8 U.S.C. 1227 (Supp. II 1996), and the Attorney
General was directed to apprehend any such alien upon his or her
release from prison, see 8 U.S.C. 1252(a)(2)(A) (1995), amended
by 8 U.S.C. 1226 (Supp. II 1996). Without minimizing the
significance of the IIRIRA, we note that it is only relevant to
this case insofar as it curtailed the Attorney General's discretion
to release such aliens. Compare id. 1252(a)(2)(B) (1995),
amended by 8 U.S.C. 1226(c)(2) (Supp. II 1996) (allowing release
of any alien who "demonstrate[d] . . . that [he or she was] not a
threat to the community and [was] likely to appear before any
scheduled hearings") with 8 U.S.C. 1226(c)(2) (prohibiting
release of such aliens).
 Gonzalez argues that for aliens like him, who hail from
countries with which the United States has no deportation
agreement, this shift will result in detention that is permanent,
unreviewable, and automatic. In fact, administrative detention by
the INS is neither permanent nor unreviewable, and the fact that
such detention might "be expected virtually by operation of law"
does not alter its status as a collateral consequence of
conviction.
 Although 8 U.S.C. 1226(c)(2) prohibits permanent
release of criminal aliens, regulations promulgated by the INS
authorize the temporary release -- pending ultimate removal -- of
any alien who is deportable on the basis, inter alia, of having
committed an aggravated felony. See 8 C.F.R. 241.4. Such
release, which may be narrowly circumscribed, is available (but
not required) "[i]f such an alien demonstrates by clear and
convincing evidence that the release would not pose a danger to the
community or a significant flight risk." Id. In addition, interim
procedures recently established by the INS provide for regular
review of each detained alien's circumstances, ensuring repeated
reevaluation of such aliens' eligibility for temporary release. 
See United States Department of Justice, INS, Memorandum from
Michael A. Pearson, Executive Associate Commissioner, Office of
Field Operations, Interim Changes and Instructions for Conduct of
Post-Order Custody Reviews (Aug. 6, 1999), reprinted in Chi Thon
Ngo v. Immigration and Naturalization Service, 192 F.3d 390, 399-
401 (3d Cir. 1999). Because Gonzalez cannot be deported to Cuba for
the foreseeable future, there is the possibility that he may
receive the benefit of the regulations notwithstanding the
statute's apparent blanket proscription. Contrary to his claims,
then, his potential for indefinite detention would be neither
beyond review nor necessarily permanent.
 Second, federal courts -- including this one -- have
previously found various "automatic" consequences of conviction to
be merely "collateral." See, e.g., Nunez-Cordero v. United States,
533 F.2d 723, 726 (1st Cir. 1976) ("We can readily imagine that a
court might be willing to grant leave to withdraw" when defendant
learned, post-plea, of "mandatory deportation" resulting from
conviction, "[b]ut we cannot say that a court must grant leave.");
United States v. Crowley, 529 F.2d 1066, 1072 (3d Cir. 1976)
(concluding that the automatic loss of a municipal job upon felony
conviction was a collateral consequence of a plea); Meaton v.
United States, 328 F.2d 379, 381 (5th Cir. 1964) (automatic loss of
rights to vote and to travel abroad upon felony conviction were
collateral consequences of a plea). What renders the plea's
immigration effects "collateral" is not that they arise "virtually
by operation of law," but the fact that deportation is "not the
sentence of the court which accept[s] the plea but of another
agency over which the trial judge has no control and for which he
has no responsibility." Fruchtman v. Kenton, 531 F.2d 946, 949
(9th Cir. 1976) (quoting Michel v. United States, 507 F.2d 461, 465
(2d Cir. 1974)); see also George, 869 F.2d at 337 (emphasizing that
deportation "may result from a criminal prosecution, but is not a
part of or enmeshed in the criminal proceeding"); Sanchez, 572 F.2d
at 211 (noting that the key inquiry is whether a consequence "is
controlled by an agency which operates beyond the direct authority
of the trial judge"). However "automatically" Gonzalez's
deportation -- or administrative detention -- might follow from his
conviction, it remains beyond the control and responsibility of the
district court in which that conviction was entered and it thus
remains a collateral consequence thereof.
 We therefore reject the argument that recent amendments
to the INA have so altered the relationship between conviction and
deportation that revisitation of our prior holdings on that
relationship is required. These holdings bar any ineffective
assistance claims based on an attorney's failure to advise a client
of his plea's immigration consequences. Gonzalez's ineffective
assistance argument thus fails to support his Rule 32(e) motion.
 2. The District Court's Failure To Inform Gonzalez
 of His Plea's Immigration Consequences
 Gonzalez's second argument is that the district court's
failure to advise him of his plea's immigration consequences
deprived the plea of the requisite voluntariness. This claim fails
for reasons akin to those that doomed his ineffective assistance of
counsel claim.
 We have previously identified "the defendant's knowledge
of the consequences of the guilty plea" as a core concern of Rule
11 which must be satisfied if a plea is to be upheld. Isom, 85
F.3d at 835; see also Cotal-Crespo, 47 F.3d at 4. But because
deportation is a collateral consequence of a guilty plea, district
courts are not obliged to grant plea withdrawal motions filed by
defendants who realize, post-plea, the immigration implications of
their conviction. See, e.g., Nunez-Cordero, 533 F.2d at 726;
Durant v. United States, 410 F.2d 689, 692 (1st Cir. 1969); see
also Campbell, 778 F.2d at 767; United States v. Russell, 686 F.2d
35, 38 (D.C. Cir. 1982); Fruchtman, 531 F.2d at 949; Michel, 507
F.2d at 465. Given the facts of Gonzalez's case, we see no more
reason to disturb our precedent in this context than we did above.
 3. The District Court's Failure to Warn Gonzalez of
 Potential Restitution
 Gonzalez further asserts that his plea colloquy was
defective because he was never informed that he would have to pay
$17,273.03 in restitution to his victims. This argument is
unavailing. We have held that where a defendant who is not warned
of the potential for restitution is nevertheless ordered to pay
such restitution, but in an amount less than the total potential
criminal fine of which he was warned, the arguable error is
harmless. See, e.g., Raineri, 43 F.3d at 42; United States v.
Padin Torres, 988 F.2d 280, 284 (1st Cir. 1993). The district
judge and the plea agreement each warned Gonzalez that he was
subject to a fine of up to $250,000. Although ordered to pay
restitution in the amount of $17,273.03, he was not subjected to
any fine. Thus, his actual financial burden at sentencing was far
less than the potential penalty of which he was warned. Even if
the court had erred by not informing him of the prospect of a
restitution order, such error was harmless and did not violate Rule
11.
B. Evidentiary Hearing
 Gonzalez also protests the district court's failure to
hold an evidentiary hearing at which he could press his Motion to
Withdraw Plea -- an evidentiary hearing that we note Gonzalez never
requested. It is axiomatic that a defendant is not entitled to an
evidentiary hearing on every motion he chooses to file. See Isom,
85 F.3d at 838; United States v. Staula, 80 F.3d 596, 603 (1st Cir.
1996); United States v. Lilly, 983 F.2d 300, 310 (1st Cir. 1992). 
An evidentiary hearing on a Rule 32(e) motion is only required when
a defendant alleges facts which, if taken as true, would entitle
him to relief. See United States v. Crooker, 729 F.2d 889, 890
(1st Cir. 1984); United States v. Fournier, 594 F.2d 276, 279 (1st
Cir. 1979). Because we have held above that Gonzalez has failed to
allege any such facts, we find that the district court did not
abuse its discretion in denying his Motion to Withdraw Plea without
holding an evidentiary hearing.
 III.
 Conclusion
 For the foregoing reasons, the district court's decision
to deny Gonzalez's Motion to Withdraw Plea is affirmed.
 Affirmed.