# United States Court of Appeals
## For the First Circuit

No. 02-2693

UNITED STATES OF AMERICA,

Appellee,

v.

VÍCTOR RODRÍGUEZ-LEÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Carter,* Senior District Judge.

Randy Olen, on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom
H.S. García, United States Attorney, and Nelson Pérez-Sosa,
Assistant United States Attorney, were on brief, for appellee.

March 17, 2005

---

* Of the District of Maine, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Defendant-appellant Víctor Rodríguez León ("Rodríguez") entered into a plea agreement on one count of aiding and abetting in the possession with intent to distribute and/or distribution of multiple kilograms of controlled substances, in violation of 21 U.S.C. § 841(a), for his involvement between the ages of nine and seventeen[1] in a drug organization in which both of his parents were also involved.  He alleges that his competence to plead guilty was questionable and that a magistrate judge erroneously recommended that he be transferred to adult status.  Consequently, he argues, the district court erred in refusing to continue sentencing proceedings in order to investigate his apparent dissatisfaction with his guilty plea.  Because we find no abuse of discretion in the district court's acceptance of the guilty plea, failure to permit its withdrawal, or refusal to continue sentencing, the decision below is affirmed.

## I.  Background

On September 19, 2001, Rodríguez was charged as a juvenile in a sealed criminal complaint for conspiracy to possess with intent to distribute narcotics, in violation of 21 U.S.C.

---

[1]  Rodríguez was born on September 14, 1983, but the government's brief indicates that he was seventeen and a half years old when he was charged on September 19, 2001 and appellant's brief indicates that he was nineteen years old at the time of his transfer hearing on May 3, 2002.  Regardless of these discrepancies, there appears to be agreement that Rodríguez's active participation in the drug organization occurred when he was between the ages of nine and seventeen.

§ 846.  On September 21, 2001, Rodríguez plead not guilty to the charge and was placed in pretrial detention.  On December 4, 2001, the government filed a Motion to Transfer to Adult Status, and amended the charge to aiding and abetting in the possession with intent to distribute and/or distribution of multiple kilograms of controlled substances, in violation of 21 U.S.C. § 841(a).

An evidentiary hearing was held before Magistrate Judge Aida M. Delgado Colón on May 3, 2001.  At the hearing, Dr. Luis Francisco Umpierre, a clinical psychologist, and Dr. Maria T. Margarida Juliá, a clinical neuropsychologist, testified on behalf of the Government and Rodríguez, respectively.  Dr. Umpierre determined that Rodríguez has an IQ of 62, corresponding to mild mental retardation, and both experts found evidence of cognitive dysfunction or brain damage.  On June 13, 2002, the magistrate judge issued a detailed Report and Recommendation.  In the Report, she made specific findings on each of the six factors that 18 U.S.C. § 5032 directs judicial officers to consider in deciding on transfer to adult status.[2]  She found that Rodríguez's prior

---

[2]  The factors are "[1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [and 6] the availability of programs designed to treat the juvenile's behavioral problems." 18 U.S.C. 5032.  The guiding principle in weighing these factors is whether "transfer would be in the interest of justice." Id.

delinquency record,[3] poor response to probationary supervision and corresponding need for an institutional rehabilitation program, and mental limitations on judgment and emotional control, in addition to the lack of evidence of the existence of adequate non-penal rehabilitation programs to suit Rodríguez's needs, all weighed in favor of transfer to adult status. In addition, the magistrate judge found that the nature of the alleged offense -- including reliable government evidence of Rodríguez's participation in murders and "hunting" rival drug gang members -- was sufficient, standing alone, to warrant transfer to adult status.

The magistrate judge also made findings as to Rodríguez's competency to stand trial. She determined, on the basis of the psychological reports, that although his mental and judgmental capacities were limited, Rodríguez was capable of distinguishing right from wrong, understanding if one penalty was harsher than another, understanding the implications of an alibi defense and assisting his counsel by providing facts and information in support

_____

[3] Between December 2000 and February 2001, Rodríguez was found guilty of possession of cocaine and six counts of possession of a firearm; arrested on charges of attempted murder, first degree murder, conspiracy to commit murder, and additional weapons violations; and charged with four counts of illegal appropriation of a vehicle. He was charged as an adult in the District of Puerto Rico in these cases. Additionally, Rodríguez was charged in commonwealth court with possession of drug paraphernalia and 135 bags of cocaine intended for distribution. Commonwealth proceedings to transfer Rodríguez to adult status on these charges were underway at the time the magistrate judge rendered her Report and Recommendation.

thereof.  Thus, she concluded, he was competent to stand trial and assist defense counsel.

Rodríguez initially filed a sealed objection to the Report and Recommendation, but just over a month later, he submitted a motion to proceed against him as an adult.  The motion states that "upon advise [sic] of counsel, [Rodríguez] voluntarily waives all further transfer procedures in this case [and] requests to be proceeded against as an adult for purposes of criminal prosecution in this case."  The same day, he waived indictment and plead guilty to one count of distribution of various narcotic drugs, in violation of 21 U.S.C. § 841(a).

At the change of plea hearing before district court judge Juan M. Pérez Giménez, Rodríguez's counsel orally withdrew his opposition to the Report and Recommendation.  After questioning Rodríguez directly, the district judge accepted the Report and Recommendation and waiver of transfer proceedings, found Rodríguez competent to waive indictment, and accepted his guilty plea.

A sentencing hearing was held on November 22, 2002.  At the hearing, the following exchange occurred between the district judge and Rodríguez's counsel:

> MR. ANGLADA: Your Honor, let me put something on the record before we start.  I am ready for sentence and we have reviewed the PSI with the client. <u>The client would like the sentence to be continued</u>. One of the reasons is that his mother was already sentenced and his father is to be sentenced at an adjacent court on December 10th. We are within the thirty-five days.  I am ready but I

have the duty and the loyalty to my client to inform the court that he would prefer sentencing to be continued.

THE COURT: What is the reason?

MR. ANGLADA: The reason, Your Honor, is that he would prefer sentence not to be imposed in accordance with the written plea agreement. His father is to be sentenced by the Honorable Court if the plea is accepted by that neighboring court for a prison term of eighteen and a half years and, of course, I am bound by the plea agreement before this court and this plea calls for the imposition of a sentence of thirty seven points with a criminal history of two for the imposition of a sentence of 240 months. So, I am ready, he would -

THE COURT: But the fact that his father may be sentenced before or after he is sentenced, how does that affect his own sentence?

MR. ANGLADA: Your Honor, in my opinion I don't see any reasoning other than the generic attitude of his father now that our plea agreement is not a satisfactory plea agreement for his father and, therefore, for him, remember that he is now 18 or 19 and his IQ is one of 62. Now he is with his father at MDC and now he is again under the influence of his father.

....

THE COURT: Again my question is, do you think it would be beneficial for him to continue now under his father's supervision or if I sentence him today ask the Marshals to transport him out of Puerto Rico, so he is not under that influence, which apparently is a very bad influence.

MR. ANGLADA: Well, Your Honor, as an attorney, as a father, I have an opinion. I don't want to further jeopardize my relationship to him, so, you know, I don't know, if you are going to accept my words as an answer.

....

THE COURT: . . . . [W]e will proceed to sentence the defendant today. I think that your actions in this case were professionally carried out. You obtained the best plea agreement you could with the government under the circumstances and I would rather have him be sentenced

-6-

today than leave the door open that might create problems between yourself and your client, which apparently they have been a very fruitful relationship.

Sentencing Transcript at 3-6 (emphasis supplied). Without directly asking Rodríguez to clarify his reasons for wanting a continuance, Judge Pérez Giménez sentenced him to 235 months in prison, eight years supervised release, and a $100 assessment.

Rodríguez appealed, claiming that his counsel's remarks at sentencing put the court on notice that he was challenging the plea agreement and sought to withdraw his plea. Accordingly, Rodríguez argues that the court erred in failing to further investigate whether he was entitled to a change of plea, and in denying the requested continuance.

## II.  Analysis

### A.  Change of plea

For purposes of our analysis, we will assume arquendo that counsel's statements amounted to a request to withdraw Rodríguez's guilty plea.[4] The district court's failure to permit withdrawal, or to inquire further into the basis for the request are therefore reviewed for abuse of discretion. See United States v. Isom, 85 F.3d 831, 834 (1996). A defendant does not have

---

[4]  Were we to hold otherwise, the district court's failure to permit a change of plea would be reviewed under the more stringent plain error standard. See United States v. Olano, 507 U.S. 725, 732 (1993); cf. United States v. Browne, 318 F.3d 261, 264-65 (1st Cir. 2003) (noting that ambiguous request for evidentiary hearing on change of plea motion would be reviewed for plain error if court did not assume request had been made).

an absolute right to withdraw a guilty plea, but rather must show a "fair and just reason" therefor. Fed. R. Crim. Proc. 32(e);[5] Isom, 85 F.3d at 834. The burden of persuading the court that such a reason exists is on the defendant. See, e.g., United States v. Moore, 362 F.3d 129, 134 (1st Cir. 2004); cf. Browne, 318 F.3d at 265 (holding that court need hear additional evidence in support of a change of plea only if there was an adequate tender by defendant). Rodríguez has offered no authority to support his contention that, despite this burden, the district court was under an affirmative obligation to inquire further into his reasons for dissatisfaction with his plea.

We turn now to an evaluation of the reasons offered by defense counsel. We have identified several factors that must be considered in determining whether a defendant has shown a "fair and just reason" for withdrawing a plea,

> the most significant of which is whether the plea was knowing, voluntary and intelligent within the meaning of [Federal Rule of Criminal Procedure 11]. The other factors include 1) the force and plausibility of the proferred reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement.

---

[5] The provisions governing withdrawal of a guilty plea were altered and moved to Rule 11(d) by amendments that went into effect December 1, 2002. As Rodríguez's request was made prior to this date, our analysis is under the standards applicable to the earlier Rule 32(e). See United States v. Cheal, 389 F.3d 35, 41 n.6 (1st Cir. 2004).

Isom, 85 F.3d at 834 (quoting United States v. Cotal-Crespo, 47 F.3d 1, 3-4 (1st Cir. 1995) (internal citations omitted)).  If these factors weigh in favor of permitting a change of plea, we must then consider the prejudicial effect such a change would have on the prosecution.  Id. at 834-35.

### 1.  Rule 11

Rodríguez argues for the first time on appeal that he lacked competence to plead guilty, thus precluding a knowing, voluntary and intelligent plea.  Competence to plead guilty is determined according to the same criteria as competence to stand trial:  the defendant must "understand[] the proceedings against him and ha[ve] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." United States v. Lebrón, 76 F.3d 29, 31 (1st Cir. 1996) (citing Dusky v. United States, 362 U.S. 402 (1960)).  In the absence of objection below, we review for plain error.[6]  Olano, 507 U.S. at 732.

---

[6]  Given that defense counsel expressly withdrew opposition to the magistrate judge's Report and Recommendation -- which contained a finding of competence to stand trial -- and read testimony from the psychological experts "where competence is highlighted" at the change of plea hearing, it could very likely be determined that the issue of competence was waived.  See United States v. Rodríguez, 311 F.3d 435, 437 (1st Cir. 2002) ("A party waives a right when he intentionally relinquishes or abandons it. . . . [A] waived issue ordinarily cannot be resurrected on appeal . . . .") (internal citations omitted).  Nevertheless, defense counsel's assertions were made in the context of addressing Rodríguez's withdrawal of his objection to the magistrate judge's recommendation of transfer to adult status, and the Report and Recommendation's findings concerning competency were not explicitly addressed.  Accordingly, and in view of the concerns generated by Rodríguez's age and mental

In support of the argument that he lacked competence to plead guilty, Rodríguez relies on the findings of the expert witnesses Drs. Umpierre and Margarida. Among these findings are that he had an IQ of 62, within the range of mild mental retardation, and that he suffers from brain dysfunction, which affects in particular his memory and ability to process language. Rodríguez also cites Dr. Umpierre's testimony at his transfer hearing that "[h]e will have problems dealing with information, analyzing it and responding in a very more mature or abstract way of responding." Transfer Hearing Transcript at 48. Dr. Margarida, the defense expert, found in her report that Rodríguez's "understanding of the legal process and functions of the court officials was at best simplistic and primitive." At the transfer hearing, she also testified that Rodríguez would have difficulty assisting in his defense, that his attorney would have to diligently check to ensure he was understanding the proceedings, and that he might be inclined to give faulty answers when questioned in order to appease the questioner or to mislead the court in order to preserve his own self-interest.

In her Report and Recommendation, Magistrate Judge Delgado reviewed the findings of both experts in evaluating Rodríguez's intellectual capacity, a component of the transfer

limitations, we will assume for the sake of analysis that the issue of competence has merely been forfeited, not waived.

-10-

decision. In a separate section of the report, she also determined that Rodríguez was competent to stand trial. This determination was made on the basis of findings from both psychologists. She noted that Dr. Umpierre determined that Rodríguez's mental status was within normal limits, and that he was not psychotic. Report and Recommendation at 22. The magistrate judge discussed Dr. Margarida's findings that Rodríguez could offer only a simplistic description of court proceedings, but noted that he nonetheless could understand the roles of court proceedings and officials. Id. When directly asked about competency, the magistrate judge indicated, Dr. Margarida had stated that there are different levels of competency and that Rodríguez was capable of remembering general details and narrating facts. Id. Finally, the magistrate judge reported that "it is understood [Rodríguez] will be able to communicate with counsel. For example, it is considered that if explained to him, [Rodríguez] may understand the implications of an 'alibi' defense and will be able to provide facts and information in support." Id. at 23.

Prior to discussing Rodríguez's guilty plea at the change of plea hearing, the district judge inquired about the defense's reasons for withdrawing objection to the Report and Recommendation, focusing primarily on the recommendation of transfer to adult status. In response, defense counsel reviewed portions of the evidence from both psychological experts "where competence is

highlighted." Change of Plea Transcript at 7. In particular, counsel noted that the prosecution expert had found Rodríguez to be in general contact with reality; responsive in a logical and coherent manner; capable of understanding the purpose of his psychological evaluation; not delusional or psychotic; articulate in an immature way; able to remember, interpret information coherently, and carry out general care; that he understood the nature of the accusations against him and the potential consequences of a long prison sentence; and that he had a general understanding of the court, defense, prosecution and judge, although he did not understand the role of the jury. Defense counsel indicated that the defense expert had agreed with the prosecution's expert's findings.[7] Id. at 6-7.

The district judge then engaged in dialogue with Rodríguez, who affirmed that he understood his attorney's explanations, the plea agreement, the potential length of his sentence, and the potential consequences of opting to go to trial instead. Id. at 10-13. The district judge determined that:

> [t]here is a finding that based on the
> assessment of both experts in psychology that
> they consider that Víctor Rodríguez is

---

[7] When questioned at the evidentiary hearing before the magistrate judge on whether Rodríguez was competent to stand trial, Dr. Margarida stated, "Yes, again it depends on, you know, a legal term or what. I guess . . . I agree with Dr. Umpierre that he will be able . . . I think he understands sort of the basic notions and that . . . and he will remember general details . . . ." Evidentiary Hearing Transcript at 98.

competent to stand trial and assist defense counsel and that although not psychologically or financial capable, not being independent, within the drug organization he acted as if he were an adult of greater age and experience. . . . [H]aving heard from counsel and the defendant and having reviewed the Magistrate's report and recommendation, the court will accept the same and will accept the waiver of the defendant for any further transfer proceedings and the court hereby orders that the defendant be processed, continues to be processed in this court as an adult.

Id. at 15-16. The district judge then questioned Rodríguez in detail about his understanding of the implications of waiving grand jury indictment and deemed him competent to do so, finding that:

[h]e understands the explanations made by his attorney as to the waiver of indictment by grand jury and also from my questioning here in court, I can see that he is reacting positive[ly] to my questions and it appears to me that he is understanding the right that he has to be indicted by a grand jury and the results of waiving that indictment by a grand jury.

Id. at 18.

The district judge considered the findings of both psychological experts, the detailed findings and recommendation of the magistrate judge regarding competence, and his own direct perception of the content and manner of Rodríguez's responses to questioning. While the evidence in favor of competence was not overwhelming, the district court did not plainly err in finding Rodríguez competent.

Beyond competence, three core concerns guide our review

-13-

of whether Rodríguez's plea met the requirements of Rule 11:  (1) absence of coercion, (2) understanding of the charges, and (3) knowledge of the consequences of the plea.  Isom, 85 F.3d at 835.  Because no objection was raised below, we review the court's acceptance of Rodríguez's plea for plain error.  See Olano, 507 U.S. at 732; United States v. Mescual-Cruz, 387 F.3d 1, 7 (1st Cir. 2004).  We do so with awareness of the concern that Rodríguez's age and significant mental limitations could affect the knowing, voluntary and intelligent nature of his plea.  See United States v. Martínez-Martínez, 69 F.3d 1215, 1220 (1st Cir. 1995) ("Whether the explanation of the charges and determination of the defendant's understanding are sufficient for Rule 11 purposes varies depending upon . . . the capacity of the defendant, and the attendant circumstances.") (internal quotation marks omitted).

During a thorough plea colloquy, the district judge made direct inquiries sufficient to establish that all three core Rule 11 concerns had been met.  Rodríguez affirmed[8] that he was not

---

[8]  Rodríguez's responses most often came in the form of one-word answers, but Judge Pérez Giménez appears to have been satisfied that the "yes" or "no" answers were not automatic, but rather based on an understanding of the substance of the questions.  In making these determinations, the district judge had the benefit of directly perceiving Rodríguez's demeanor while responding.  Cf. United States v. Jiménez-Villasenor, 270 F.3d 554, 560 (8th Cir. 2001) (noting district court's opportunity to observe demeanor of defendant who had ingested sedatives in finding no clear error in determination of competence).  Furthermore, the one-word answers were responsive to yes-or-no questions.  In this case, we will not second-guess the district judge's acceptance of Rodríguez's one-word responses.

threatened or forced to waive indictment, Change of Plea Transcript at 16, and that he was not threatened, forced, or enticed to plead guilty. Id. at 23, 28. He affirmed that he understood the charges against him, as detailed by the district judge, Id. at 18-19, admitted to guilt on those charges, id. at 29, 32, and affirmed that his plea was made freely and voluntarily because he was, in fact, guilty. Id. at 28. Rodríguez indicated that he knew the potential sentence to be ten years to life. Id. at 22. Judge Pérez Giménez went through the specifics of the plea agreement, and asked questions to ensure that Rodríguez understood the recommended sentence and that the judge would be free to impose a higher sentence if he so chose. Id. at 24-28. Judge Pérez Giménez also questioned and received affirmation from Rodríguez that he understood the terms of supervised release after the sentence was served, id., and that parole was unavailable, id. at 28. Judge Pérez Giménez also delved further into Rodríguez's apparent reluctance to accept the plea after Rodríguez indicated that he had spoken to his mother and other relatives, who felt, as he did, that the recommended 240-month sentence was too long. Id. at 10. The district judge asked why, in that case, he was accepting the plea agreement, and Rodríguez indicated that he did so because he felt he could not get a more favorable agreement. Id. at 10-13.

The colloquy summarized above was comprehensive, and the district judge adequately investigated the knowing, voluntary, and

-15-

intelligent nature of Rodríguez's plea.  Thus, we find no plain error.

### 2.  Other factors

Beyond compliance with Rule 11, other factors to be considered in determining whether a defendant has offered a "fair and just" reason for withdrawing a guilty plea are "1) the force and plausibility of the proferred reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement." Isom, 85 F.3d at 834 (quoting Cotal-Crespo, 47 F.3d at 3-4 (internal citations omitted)).  Each of these factors weighs against plea withdrawal in the instant case.

When asked why his client wished not to be sentenced according to the plea agreement, defense counsel stated, "I don't see any reasoning other than the generic attitude of his father now that our plea agreement is not a satisfactory plea agreement for his father [who had reached a plea agreement on related drug charges for a sentence of 18.5 years] and, therefore, for him . . . ." Sentencing Transcript at 4.  Neither Rodríguez's, nor his father's, dissatisfaction with the length of the sentence imposed by the plea agreement required the district court to permit a change of plea. See Miranda-González v. United States, 181 F.3d 164, 165 (1st Cir. 1999) ("A guilty plea will not be set aside where a defendant has had a change of heart simply because . . . he

is not satisfied with the sentence he has received."); see also United States v. Elias, 937 F.2d 1514, 1520 (10th Cir. 1991) ("A defendant's dissatisfaction with the length of his sentence generally is insufficient reason to withdraw a plea."). The timing of Rodríguez's request, which occurred at the sentencing hearing over two months after entering his guilty plea, also calls the fairness and justice of permitting a change into question. See, e.g., Isom, 85 F.3d at 838 ("We have repeatedly noted that the more a request is delayed -- even if made before sentence is imposed -- the more we will regard it with disfavor."). No reason has been offered for this delay, nor did any change of circumstances occur in the interval to support a change of plea. Rodríguez has not asserted his innocence of the charged offenses, and the guilty plea was properly accepted as part of a voluntary plea agreement. Thus, all four of the Isom factors weigh against permitting a change of plea.

Nevertheless, Rodríguez argues that an additional factor should be weighed in favor of permitting a change of plea: the magistrate judge's recommendation that he be transferred to adult status was, he now argues, erroneous. Although Rodríguez initially filed an objection to the magistrate's Report and Recommendation, his counsel explicitly withdrew the objection, see Change of Plea Transcript at 4, and submitted a motion to the district court for Rodríguez to be proceeded against as an adult. A party waives a

right when he intentionally relinquishes or abandons it, and a waived issue ordinarily cannot be raised on appeal. See United States v. Rodríguez, 311 F.3d 435, 437 (1st Cir. 2002); United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996) ("[W]here there was forfeiture, we apply a plain error analysis; where there was waiver, we do not.") (citing United States v. Lakich, 23 F.3d 1203, 1207 (7th Cir. 1994) (noting that "if there has been a valid waiver, there is no 'error' for us to correct"). Accordingly, we will not evaluate the merits of the decision to transfer Rodríguez to adult status. The issue was waived, and may not be revived collaterally during our review of Rodríguez's wish to change his plea.

Rodríguez admitted to the factual bases of the charged offenses and affirmed that he had knowingly, intelligently, and voluntarily entered into a plea agreement with the government. The district court did not plainly err in finding Rodríguez competent to enter the guilty plea, nor in accepting the plea within the strictures of Rule 11. Almost three months later, with no explanation for the delay, Rodríguez offered only his and his father's dissatisfaction with the sentence as a reason for changing his plea. Even considering Rodríguez's impaired mental capacity, we cannot find that the district court abused its discretion by declining to permit a change of plea under these circumstances.

**B. Motion for continuance**

Rodríguez also posits that the district court erred in denying his motion to continue sentencing, arguing on appeal that the district court ought to have granted the continuance in order to more fully explore Rodríguez's reasons for dissatisfaction with his plea. As we determined above, the burden of showing a valid reason for seeking to withdraw the guilty plea was on the defense, and the district judge was under no obligation to investigate further.

"We grant broad discretion to a trial court to decide a continuance motion and will only find abuse of that discretion with a showing that the court exhibited an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." United States v. Rodríguez-Marrero, 390 F.3d 1, 21-22 (1st Cir. 2004) (internal quotation marks omitted). On review, we consider, inter alia, "the delay entailed, the reasons for the request, whether the moving party is at fault, any inconvenience to the court and litigants, and whether the denial of a continuance unfairly would prejudice the moving party." Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 63 (1st Cir. 2003).

The reasons offered for continuance were the impending sentencing of Rodríguez's father, along with both Rodríguez's and his father's dissatisfaction with the length of Rodríguez's sentence. As discussed above, dissatisfaction with the length of

a sentence is insufficient to require a change of plea. Moreover, even if sentencing had been postponed until after Rodríguez's father received the expected shorter sentence on related charges, this would not have entitled Rodríguez to change his plea. See United States v. Santiago, 229 F.3d 313, 317 (1st Cir. 2000) (finding that the fact that defendant's co-conspirators had received lesser sentences lacked merit as a reason for permitting a change of plea). Furthermore, after questioning defense counsel about the reason for seeking continuance at length, the district judge concluded that the plea agreement was the best Rodríguez could obtain and that continuing sentencing would have had the negative effect of returning Rodríguez to the same detention facility as his father, who exerted a negative influence on him. Thus, denial of the request did not cause unfair prejudice to Rodríguez, whereas its grant would have inconvenienced the court and litigants. The district judge's decision to deny a continuance is not the kind of manifest abuse of discretion that would merit reversal by this court.

### III. <u>Conclusion</u>

For the reasons stated above, the decision of the district court is **<u>affirmed</u>**.