# United States Court of Appeals
## For the First Circuit

No. 04-2387

UNITED STATES OF AMERICA,

Appellee,

v.

GERALD MORRISETTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Chauncey B. Wood, with whom Shea, Larocque & Wood was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

November 16, 2005

**CYR**, <u>Senior Circuit Judge</u>.  Gerald Morrisette appeals from the judgment of conviction and sentence entered against him by the district court, for distributing cocaine base, <u>see</u> 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).  He contends that (i) the guilty plea was not knowing and voluntary, (ii) the government failed to prove that he possessed in excess of 50 grams of cocaine base as charged in the indictment; (iii) the court erred in determining that he did not qualify for the "safety-valve" sentence reduction permitted under 18 U.S.C. § 3553(f), and (iv) he is entitled to a <u>Booker</u> remand so as to allow the district court to consider his family and mental-health history pursuant to the advisory Guidelines regime.  As we discern no error, we affirm the district court judgment.

**I**

**<u>BACKGROUND</u>**

On March 16, 2004, police officers discovered a zip-lock baggy containing approximately 70 grams of crack cocaine at Morrisette's residence.  After Morrisette admitted to its possession, he was charged with a single count of possessing five or more grams of cocaine base, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).

On June 25, 2004, Morrisette entered a plea of guilty.  In the course of the plea colloquy, the district court inquired whether Morrisette was under psychiatric care, and whether he was taking medication.  He responded that he was taking Thorazine for

-2-

anxiety, as prescribed by a doctor at the Cumberland County Jail. The court inquired whether the medication prevented him from understanding what was happening during the plea hearing, and Morrisette responded in the negative. Prior to accepting the guilty plea, the district court informed Morrisette: "I've observed you and your demeanor and attitude throughout these proceedings, and I find that you're not under the influence of any substance that would impair your judgment."

Thereafter, on July 6, defense counsel obtained the approval of the district court to have Morrisette hospitalized for psychiatric evaluation, citing a troubled family history, and a medical diagnosis that Morrisette had experienced chronic abnormal symptoms, including, inter alia, undifferentiated schizophrenia and auditory hallucinations, as well as severe polysubstance abuse and a marginal IQ. Following treatment with Zyprexa, Morrisette's condition improved, and on August 12 he was discharged.

The presentence report (PSR) noted that Morrisette had told the police that, in addition to the 70 grams of crack cocaine charged in the indictment, he had possessed another 3/4 kilogram which he and his drug partner, Donald Couture, had acquired for distribution. In Morrisette's objection to the PSR, he denied making any such incriminating statement.

At sentencing, Morrisette unsuccessfully urged the district court to depart downward, based on (i) diminished mental

-3-

capacity, citing his mental health and substance abuse problems, and (ii) family history. The government represented to the court that because there was no available lab analysis of the weight of the packaging of the 70-gram baggy of cocaine, no request would be made for imposition of the ten-year mandatory minimum sentence for drug amounts exceeding 50 grams, 21 U.S.C. § 841(b)(1)(A)(iii), but only for the five-year mandatory minimum sentence, id. § 841(b)(1)(B)(iii). Nevertheless, the government insisted that the Sentencing Guidelines base offense level (BOL) should be determined by reference to the 70-gram amount charged in the indictment, thus yielding a BOL of 32. Defense counsel expressly agreed with the position stated by government counsel.

The court declined to apply the "safety valve" provisions of 18 U.S.C. § 3553(f), which would permit the imposition of a sentence below the five-year mandatory minimum in certain specified circumstances, and cited evidence that the police had seized eleven firearms from the Morrisette apartment during their execution of the search warrant. The court nevertheless accepted the government's recommendation that Morrisette receive a downward departure for substantial assistance to the government. Ultimately, Morrisette was sentenced to 78 months' imprisonment.

**DISCUSSION**

**A.   The Guilty Plea**

Morrisette first contends that the guilty plea entered on June 25, 2004, was neither knowing nor voluntary, see Fed. R. Crim. P. 11, since the district court was aware of his history of serious mental-health and substance-abuse problems, yet failed to ascertain whether the medication prescribed to treat these conditions may have prevented him from understanding what transpired at the "change of plea" hearing. Morrisette cites our decision in United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991), as controlling authority.

We normally review the acceptance of a guilty plea only for abuse of discretion, but since Morrisette failed either to move to withdraw his guilty plea below, see Fed. R. Crim. P. 11(d)(2), or otherwise to raise the present objections before the district court, we review only for plain error. See United States v. Delgado-Hernandez, 420 F.3d 16, 19-20 (1st Cir. 2005). Thus, Morrisette must demonstrate that (i) an error occurred, (ii) which was obvious, (iii) affected his substantial rights, and (iv) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. See id. Morrisette cannot meet this heavy burden.

Competence to enter a guilty plea is determined by the

-5-

same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality. See United States v. Rodriguez-Leon, 402 F.3d 17, 22 (1st Cir. 2005).

The Parra-Ibanez case is readily distinguishable. Before Parra-Ibanez entered his guilty plea, the district court had ordered a mental evaluation and conducted a competency hearing during which it received evidence that Parra-Ibanez was suicidal and suffered from serious mental-health problems. See Parra-Ibanez, 936 F.2d at 591. In contrast, since Morrisette raised no issue concerning his competency until after the change of plea hearing, the district court never learned of Morrisette's medical diagnosis until after it had accepted the guilty plea, and therefore it cannot have ignored any red flags.

In Parra-Ibanez, after the court learned that Parra-Ibanez was taking three medications, it failed to question whether the medications were such as would have had the effect of preventing Parra-Ibanez from comprehending the plea hearing proceedings. See id. at 595-96; see also Cody v. United States, 249 F.3d 47, 53 (1st Cir. 2001) (noting that the court in Parra-Ibanez "failed to follow up with any question whatsoever about whether the defendant's medication affected his competence") (emphasis added); Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999) ("The absolute failure to investigate further

-6-

once apprised of the recent ingestion of drugs doomed the plea entered by the defendant[] in Parra-Ibanez . . . .") (emphasis added).  At Morrisette's hearing, however, the court specifically inquired whether the medication (viz., Thorazine) prevented Morrisette from understanding what was happening during the hearing, and Morrisette responded "no."  Given the facts available to the district court at the time, its inquiry was not plainly inadequate:

> Judges are not pharmacists or doctors. Occasionally the aid of an expert may be necessary to explain the likely or actual effects of a particular drug. However, practical judgments can usually be made. Courts have commonly relied on the defendant's own assurance (and assurances from counsel) that the defendant's mind is clear. Further, the defendant's own performance in the course of a colloquy may confirm, or occasionally undermine, his assurances. Conversely, a defendant's prior medical history or behavior may call for heightened vigilance.

United States v. Savinon-Acosta, 232 F.3d 265, 268-69 (1st Cir. 2000).

Neither Morrisette nor defense counsel advised the court either that the Thorazine had the potential seriously to affect Morrisette's cognitive abilities,[1] or that the Thorazine was not

---

[1]Morrisette now contends that he was not taking Thorazine, but Zyprexa.  The difference is not material in this instance, however, as we must assess the plea in reference to the facts known to the court at the plea hearing. Even assuming Morrisette incorrectly identified his medication regimen, defense counsel corroborated that Morrisette was taking Thorazine. We may take notice, however, that the Physician's Desk Reference categorizes both these drugs as

-7-

effectively ameliorating the symptoms associated with schizophrenia and substance abuse. The district court asked Morrisette a series of questions regarding his understanding of the terms of the plea agreement, to which Morrisette provided cognizant and coherent responses.[2] At one point, Morrisette volunteered a statement regarding his fears of retaliation, which had prompted his request to be placed in the witness protection program. See id. at 269 (noting that defendant volunteered "more elaborate responses" to questions susceptible of "yes" and "no" responses). Finally, after observing Morrisette's demeanor first hand, the district court made an explicit finding that Morrisette was competent to enter the guilty plea. See Rodriquez-Leon, 402 F.3d at 25 n.8 (noting that appellate review is somewhat circumscribed, in that district court had better vantage to assess defendant's demeanor).

Given these particular circumstances, therefore, Morrisette cannot demonstrate plain error, and the guilty plea stands.

## B. The Drug Quantity

Morrisette next contends that the district court erred in

_____

anti-psychotics.

[2]Morrisette objects that most of the answers he gave were "yes" or "no," which provided a poor indication of his level of comprehension. We have rejected this argument. See Rodriguez-Leon, 402 F.3d at 25 n.8 (noting difference between "automatic" "yes" and "no" answers, as distinguished from those "based on an understanding of the substance of the questions").

determining the drug quantity at 70 grams, since the prosecutor conceded at the sentencing hearing that he had not yet obtained the laboratory analysis to determine the relative weight of the packaging and the cocaine base.  This contention likewise fails.

As Morrisette failed to assert this objection before the district court, we review only for plain error.  See United States v. Antonakopoulos, 399 F.3d 68, 77 (1st Cir. 2005).  The Sixth Amendment right to jury trial is not offended where the defendant was sentenced on the basis of admitted facts.  See United States v. Booker, 125 S. Ct. 738, 756 (2005).  Before Morrisette entered into plea negotiations with the government, the district court explicitly warned him that "70 grams is the crack quantity on which you will be sentenced unless you make a different arrangement [with the government]."  During the Rule 11 colloquy, the district court informed Morrisette that, given the recent decision in Blakely v. Washington, 542 U.S. 296 (2004) (invalidating state sentencing guidelines similar to the federal Guidelines), it was possible that the Supreme Court might determine that the Guidelines violated a defendant's Sixth Amendment rights where the court predicated its sentence upon a drug quantity not determined by a jury.  Morrisette and defense counsel both conceded the accuracy of the prosecution's recitation of the facts relevant to the offense, including the fact that the police recovered a zip-lock baggy containing approximately 70 grams of crack cocaine.  Subsequently, Morrisette again failed

to object when the PSR stated that he had possessed approximately 70 grams of crack cocaine and thus should be ascribed a BOL of 32. As Morrisette consistently admitted to possessing 70 grams of crack cocaine, the district court did not commit plain error in utilizing that amount in establishing the BOL. See, e.g., United States v. Riggs, 347 F.3d 17, 20 (1st Cir. 2003), cert. denied, 540 U.S. 1126 (2004).

Government counsel's concession, at sentencing, that the government was not then prepared to establish that the weight of the cocaine (as contrasted with the weight of its packaging) exceeded 70 grams, in no sense mitigated Morrisette's waiver. Government counsel addressed the matter only as it applied to the government's decision not to seek the higher statutory mandatory ten-year minimum sentence, imposed for drug quantities exceeding 50 grams, rather than the 5-year minimum for amounts less than 50 grams. Moreover, defense counsel explicitly agreed with this treatment, by representing to the court that Morrisette wanted to "mak[e] a compromise: the mandatory minimum five years, not to fight, agreeing to more than 50 [grams] for an offense level of 32." Furthermore, defense counsel characterized the government's concession as "reasonable under the circumstances," and requested that the district court "accept" the government's proposed approach. Given these stark circumstances, Morrisette can hardly assert plain error.

Further, we would note that the motivations for Morrisette's agreement to the "compromise" are readily apparent. First, although not the subject of evidentiary demonstration, on the present record, it is highly implausible that the weight of the packaging – a zip-lock baggy – would constitute 29% of the total weight of the package and its contents, <u>viz.</u>, 70 grams. Second, the government could have included in the indictment the 3/4 kilogram of crack cocaine which Morrisette allegedly admitted possessing with his drug partner Donald Couture. Finally, the fact that the government had yet to receive a lab analysis as to the weight of the drug package at the time of sentencing cannot be presumed to mean that the government could not have presented the analysis at trial had Morrisette rejected the plea agreement. The Morrisette admission that he possessed 70 grams of crack cocaine was obviously strategic, as it benefitted him considerably at sentencing. Accordingly, we discern no plain error in the district court's determination of the drug quantity as 70 grams, with a resulting BOL of 32.

## C. The "Safety Valve" Provision

The "safety valve" provision in the Sentencing Guidelines ordains that the district court ought not impose the statutory mandatory minimum sentence where the defendant has satisfied five criteria, including the criterion that the defendant did not possess a firearm in connection with the offense of conviction. 18

U.S.C. § 3553(f)(2); U.S.S.G. § 2D1.1(b)(7). Morrisette maintains that the district court violated the Sixth Amendment by crediting evidence that the police found eleven firearms in Morrisette's apartment during their execution of the search warrant, a sentencing fact that (according to Morrisette) Blakely determined must be either decided by a jury or admitted by the defendant. We disagree.

The "safety valve" provision serves to reduce a sentence below the statutory mandatory minimum sentence, and thus the burden of proof rests with the defendant to establish the five criteria set out in subsection 3553(f). See United States v. McLean, 409 F.3d 492, 502 (1st Cir.), cert. denied, No. 05-6286, 2005 WL 2494179 (U.S. Oct. 11, 2005). Blakely, and by extension Booker, expressly relate only to the constitutionality of judicial factfinding which results in sentencing enhancements, not to sentencing reductions. See United States v. De Los Santos, 420 F.3d 10, 13 n.3 (1st Cir. 2005); United States v. Bermudez, 407 F.3d 536, 545 (1st Cir.), cert. denied, 126 S. Ct. 304 (2005); see also United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005). Accordingly, the district court finding that Morrisette failed to establish that he did not possess a firearm in connection with the offense of conviction is not subject to this type of Blakely-Booker challenge.

**D.    Post-Booker Remand**

Finally, Morrisette contends that we must vacate and remand for resentencing in light of <u>Booker</u>, because there is a "reasonable probability" that the district court would impose a more favorable sentence under the post-<u>Booker</u> sentencing regime, which treats the Sentencing Guidelines as advisory rather than mandatory.  <u>See</u> <u>Antonakopolous</u>, 399 F.3d at 75.  Morrisette cites several factors which the district court might now consider grounds for imposing a sentence below the corresponding Guidelines sentence, including his troubled family history,[3] and his history of serious untreated mental illness.

The fatal flaw in these contentions is that the district court was presented with all of this evidence, yet decided that Morrisette's contentions bore no relevance in determining whether to grant a downward departure.  Under the Sentencing Guidelines, family history and mental illness are merely discouraged grounds for departure, not forbidden grounds.  <u>See</u> U.S.S.G. §§ 5H1.2, 5H1.3, 5H1.4.  We ordinarily have refused to order post-<u>Booker</u> remands where – as here – the district court had before it all the evidence material to these factors, yet demonstrated no inclination

---

[3]Morrisette adduced evidence that his parents were poor, had serious mental illnesses, were alcoholics, and were physically abusive.  He himself was illiterate and had only limited education (through sixth grade).  His mother put him out of the house when he was twelve-years-old, whereupon he began using illegal drugs and abusing alcohol.

-13-

to consider them grounds for departure.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Martins</u>, 413 F.3d 139, 154 (1st Cir. 2005)  ("Nearly all the factors to which [defendant] alludes were limned in the PSI Report, yet the district court chose not to speak to them at sentencing. The inference is that the court was unimpressed.").  For example, in denying the "diminished capacity" departure, the court stated: "[T]he psychiatric report . . . does not establish that [his] significantly reduced mental capacity contributed substantially to the commission of this offense."  We therefore see no reasonable probability that the district court would reconsider the relevance of such evidence under the now-advisory Guidelines regime.

**<u>Affirmed</u>**.