# United States Court of Appeals
## For the First Circuit

Nos. 07-2225, 07-2226

UNITED STATES OF AMERICA,

Appellee,

v.

RAÚL FIGUEROA-GONZÁLEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before
Boudin, Dyk* and Thompson,
Circuit Judges.

Juan F. Matos de Juan, by appointment of the court, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on consolidated brief for appellee.

October 7, 2010

---

*Of the Federal Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**.      Raúl Figueroa-González ("Figueroa") was charged, in two separate indictments, with four counts of carjacking, 18 U.S.C. § 2119(1) (2006), and four counts of use of a firearm during and in relation to a crime of violence, id. § 924(c)(1)(A).  The two cases were eventually consolidated for change-of-plea and sentencing, and Figueroa then pled guilty to three counts of carjacking and one of firearm use.  He now appeals the conviction, contesting the district court's finding of competency.

The issue of Figueroa's competence arose during plea bargaining, and the government, pursuant to 18 U.S.C. § 4241(a)-(b), requested a comprehensive mental evaluation at a federal medical facility.  In response, the district court appointed forensic psychiatrist Cynthia Casanova Pelosi and--on Casanova's recommendation--clinical psychologist María Teresa Margarida Juliá; both evaluations were conducted at a local detention center, rather than a federal facility.

Margarida's neuropsychological evaluation in March 2006 noted Figueroa's clinical history of mental retardation and included intelligence test results that indicated moderate cognitive impairment and an IQ of 47.  However, she also reported that Figueroa showed "variable effort throughout the test, which means that his performance is probably not an accurate representation of his optimal capacity."  Taking that factor into

-2-

account, she still placed him in the "mild to moderate range of mental retardation."  She concluded:

> [Figueroa's] neuropsychological status reveals a diminished capacity and limitations in his ability to assist in the process of his defense and understand the process of a trial, but does not impair him from being able to understand the nature of the accusations and charges against him.  He can be assisted to compensate for his cognitive limitations by the use of memory aids . . . .

Casanova's forensic psychiatric report was based on a two-hour interview with Figueroa, interviews with his father and defense counsel and her review of documents.  Based on the information collected[1] and her own evaluation, Casanova concluded that Figueroa "is barely able to understand the charges pending against him and possible consequences but is not able to cooperate with counsel in his defense, nor able to follow and participate during court procedures in an efficient manner."

The government disagreed, citing the "degree of leadership, participation and conduct" Figueroa exhibited: obtaining and using weapons, leading a violent gang, participating in home invasions and carjackings, preventing victims from alerting authorities, abusing and threatening victims, taking hostages,

---

[1]Figueroa's lawyer told Casanova that "when he tries to explain the charges, possible consequences and alternatives such as plea bargains, [Figueroa] remains mute, [claims] not to remember things and occasionally cries."  Figueroa denied knowing the circumstances leading to his arrest, the penalties related to the charges, the name of his lawyer, or what a district attorney or jury would do.

driving vehicles, demanding ATM withdrawals, and abandoning victims in deserted areas. The government sought a comprehensive evaluation in a federal facility to which the court agreed, but in the meantime it proceeded with a scheduled competency hearing.

At the April 7, 2006, competency hearing, Carlos E. Roscoe, a member of the FBI carjacking task force, testified. He described Figueroa as striking a victim and a reluctant co-conspirator, forcing victims to withdraw money from ATMs, organizing a group for robbery, giving orders to others, communicating directions through hand signals, issuing death threats, and being involved in drug sales.

Margarida was unavailable, so the only other testimony came from Casanova. She stated that Figueroa has tested to have "between moderate to mild mental retardation" and after hearing the FBI testimony she would lean towards mild retardation rather than moderate. She then testified that, in her opinion, Figueroa understood the charges and possible consequences. He could be "fit to proceed" only if medicated and given careful explanations of the plea bargaining prior to the hearing, and he was limited in his ability to discuss the situation with his lawyer.

Figueroa was then evaluated at the Federal Detention Center, Miami, Florida, from July 12, 2006, to August 26, 2006. Based on four hours of psychological testing, a review of records and interviews of the attorneys and detention center staff,

-4-

forensic psychologist Jorge Luis found Figueroa competent to stand trial, concluding that "there is no evidence that Mr. Figueroa-Gonzalez is currently experiencing the active phase of a mental disorder or defect that would render him unable to understand the nature and consequences of the proceedings against him at this time."

Although Figueroa obtained the lowest possible scores for intellectual functioning, Luis found that the defendant was malingering--deliberately attempting to perform more poorly than his actual capacity.[2]  In addition, Luis believed that the earlier evaluations were "probably invalid" because Margarida's report suggested malingering and because she did not follow the standardized administration of the test.

On January 25, 2007, the district court attempted to hold a change of plea hearing.  Figueroa complained of his counsel's performance in relation to the calculation of his sentence, exhibiting what the district court took to be a cogent understanding of a complex sentencing matter.  The district court agreed to replace his counsel, and noted that Figueroa was "a lot

---

[2]For example, Luis reported that on one test Figueroa's performance was "consistently poor on the easiest items and his performance improved as item difficulty increased."  On another test, "his scores were significantly below chance levels of responding and significantly below the results obtained in genuinely impaired individuals. This suggest[s] that the defendant attended to the questions, understood the content, scanned for the correct response, and purposely chose the incorrect responses on a consistent basis."

more capable than we think" given his ability to understand the issue, which had been discussed entirely in English.

At a new hearing on March 22, 2007, Figueroa stated that he was competent, and his counsel stated that he "had been able to establish . . . effective communication with [Figueroa]" and that he had "no doubts . . . that he understands what he is doing and that he is, in fact, competent." Figueroa then pled guilty to three counts of carjacking and one of firearm use. He was sentenced to concurrent 18-year sentences for the carjacking counts and a consecutive 7-year sentence for the firearm count.

The only argument Figueroa raises on appeal is whether the district court erred in finding him competent to plead guilty. This court raised a second issue sua sponte as to whether the sentence for the firearm count was properly based on brandishing, for which a 7-year sentence is a mandatory minimum, 18 U.S.C. § 924(c)(1)(A)(ii), but both parties agree that the facts in the record clearly indicate brandishing so we need say no more about that issue.

Figueroa's appellate brief suggests two legal bases for his competency claim: that Figueroa's alleged actual incompetence at the time of pleading violated his substantive due process under the Fifth Amendment and that the court violated Federal Rule of Criminal Procedure 11. But the latter consists solely of the claim that Figueroa was not competent to plead or be sentenced, cf.

United States v. Cheal, 389 F.3d 35, 43 (1st Cir. 2004), and so is subsumed in the former.

Arguably, Figueroa has forfeited or even waived these claims: his trial counsel raised questions about competency, but that counsel, his successor, and Figueroa himself each stated during the change-of-plea hearings that Figueroa was competent and understood the charges and the plea. Whether a waiver would be valid if the defendant were incompetent might be debated,[3] but Figueroa's claims would fail even if they had been raised and maintained throughout the proceedings below.

Figueroa argues that the district court misunderstood the proper legal standard for competency, a claim we review de novo. United States v. Wiggin, 429 F.3d 31, 37 (1st Cir. 2005). "Competence to enter a guilty plea is determined by the same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality." United States v.

---

[3]See Pate v. Robinson, 383 U.S. 375, 384 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."); United States v. Hurley, 63 F.3d 1, 18 (1st Cir. 1995) (same), cert. denied, 517 U.S. 1105 (1996). But cf. United States v. Giron-Reyes, 234 F.3d 78, 80 (1st Cir. 2000) (reviewing claimed defect in competency proceedings only for plain error); United States v. Muriel-Cruz, 412 F.3d 9, 11 (1st Cir. 2005) (same).

Morrisette, 429 F.3d 318, 322 (1st Cir. 2005). Figueroa asserts that the district court focused only on "alleged dangerousness" and had decided in advance that Figueroa was both guilty and competent.

Figueroa points to comments of the judge that suggest concern about Figueroa's dangerousness and that state that Figueroa will not be "let . . . loose" or allowed to "walk away," but these are taken out of context. A careful review of the entire transcript shows that the district judge did not substitute dangerousness for the correct standard and did not predetermine the issue.

Indeed, in its order appointing Casanova, the district court expressly stated the question to be "whether the defendant understands the charges against him and is able to assist counsel in the preparation of a defense." Casanova and Luis' reports both directly address these issues. And at the competency hearing, the court asked Casanova a series of questions regarding Figueroa's ability to communicate with his lawyer and remember his participation in the criminal acts.

Where the correct standard is applied, we "uphold a district judge's determination of competency after a hearing unless clearly erroneous." United States v. Santos, 131 F.3d 16, 20 (1st Cir. 1997) (citing United States v. Lebrón, 76 F.3d 29, 32 (1st Cir.), cert. denied, 518 U.S. 1011 (1996)). Here, there was no error, clear or otherwise. The district court was presented with

-8-

conflicting evidence and chose to conclude that the evidence was stronger in favor of competency.

It is true that Casanova had initially found Figueroa unable to assist counsel, and Margarida found him limited in his ability to assist counsel and understand the trial process. However, Luis had more extensive observation of Figueroa and found him competent (and malingering); Roscoe testified as to his ability to plan, execute, and lead crimes; Figueroa and his counsels assured the court that he was competent; and the court itself observed that Figueroa was "a lot more capable than we think." Choosing to credit the second set of factors falls well within the court's domain. See Pike v. Guarino, 492 F.3d 61, 77 (1st Cir.), cert. denied, 552 U.S. 1066 (2007).

Figueroa's brief may imply that the court should have held a second competency hearing sua sponte after receiving Luis' report. However, a court generally need not hold a hearing after a qualified expert has found a defendant competent, United States v. Bruck, 152 F.3d 40, 46 (1st Cir. 1998); here, Figueroa had not previously been found incompetent by a court, cf. Giron-Reyes, 234 F.3d at 81-82, and nothing after Luis' report suggested a deterioration, see Yeboah-Sefah v. Ficco, 556 F.3d 53, 83 (1st Cir.), cert. denied, 130 S. Ct. 639 (2009).

Affirmed.